UNITED STATES DISTRICT COURT
DISTRICT OF MAINE


| | | |
|---|---|---|
| SHANNON HARVEY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Docket No. 06-133-B-W |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security [1] | ) | |
| | ) | |
| Defendant | ) | |


### REPORT AND RECOMMENDED DECISION[2]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question whether the commissioner failed to develop the record adequately with respect to the plaintiff's claimed fibromyalgia before determining that she was capable of returning to past relevant work as an assistant manager, cashier and circuit-board inspector. I recommend that the decision of the commissioner be affirmed.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had only one severe impairment, chronic pain syndrome, Finding 3, Record at 15; that she was capable of performing past relevant

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), I have substituted currently serving Commissioner of Social Security Michael J. Astrue as the defendant in this matter.

[2] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on July 3, 2007, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority and page references to the administrative record.

work as an assistant manager, cashier and circuit-board inspector, Finding 6, *id*. at 19; and that she therefore had not been under a disability at any time through the date of decision, Finding 7, *id*.[3] The Appeals Council declined to review the decision, *id*. at 6-9, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The plaintiff complains that the administrative law judge committed fatal error, falling short in her duty to develop the record, when she failed to order a consultative examination by a rheumatologist to determine definitively whether the plaintiff suffered from fibromyalgia as claimed. *See* Plaintiff's Itemized Statement of Specific Errors ("Statement of Errors") (Docket No. 10) at 5. I disagree.

## I. Discussion

The administrative law judge found that the plaintiff had not established the existence of a medically determinable fibromyalgia impairment, observing:

> The claimant has told medical practitioners that she was diagnosed with fibromyalgia at age 18, but there is no medical evidence to substantiate that claim. Chiropractor Richard S. Horowitz DC simply repeats her statement, but provides no information about medical findings to substantiate the diagnosis. Following a December 20, 2004 physical examination, Dr. Gavin M. Ducker reported that . . . it was conceivable that

---

[3] Inasmuch as the plaintiff had acquired sufficient quarters of coverage to remain insured for purposes of SSD through December 31, 2008, *see* Finding 1, Record at 15, there was no need to undertake a separate SSD analysis.

2

> she had fibromyalgia, and recommended that she be evaluated by a rheumatologist and begin physical therapy. Two hours after she left the office, she canceled the physical therapy and told them not to arrange a rheumatology opinion. She did not feel that she could get along with Dr. Ducker and she was going to find another physician. A medical form completed by a physician at the Arthur Jewell Community Health Center states that the claimant has fibromyalgia, but that statement appears to be based on the claimant's report as there are no physical findings to support the diagnosis. The medical evidence does not establish fibromyalgia as a medically determinable impairment.

Record at 16-17 (citations omitted).[4]

The plaintiff, who was represented by counsel, *see id*. at 27, endeavors to lay the blame for that evidentiary deficiency at the feet of the commissioner, *see generally* Statement of Errors. The First Circuit has explained:

> In most instances, where appellant himself fails to establish a sufficient claim of disability, the Secretary need proceed no further. Due to the non-adversarial nature of disability determination proceedings, however, the Secretary has recognized that she has certain responsibilities with regard to the development of evidence and we believe this responsibility increases in cases where the appellant is unrepresented, where the claim itself seems on its face to be substantial, where there are gaps in the evidence necessary to a reasoned evaluation of the claim, and where it is within the power of the administrative law judge, without undue effort, to see that the gaps are somewhat filled ? as by ordering easily obtained further or more complete reports or requesting further assistance from a social worker or psychiatrist or key witness.

*Heggarty v. Sullivan*, 947 F.2d 990, 997 (1st Cir. 1991) (citation and internal quotation marks omitted). The plaintiff argues that, in this case, three of the four requisites for a heightened duty to develop the Record existed – namely, that (i) her claim was substantial, given that both Drs. Ducker and Horowitz believed she had fibromyalgia and suggested she was significantly impaired by it, and she claimed to have been diagnosed as having fibromyalgia by rheumatologists in Connecticut and Massachusetts, *see* Statement of Errors at 6, (ii) the gap – absence of a definitive fibromyalgia

---

[4] Fibromyalgia is defined as "[a] syndrome of chronic pain of musculoskeletal origin but uncertain cause." Stedman's Medical Dictionary 671 (27th ed. 2000). "The American College of Rheumatology has established diagnostic criteria that include pain on both sides of the body, both above and below the waist, as well as in an axial distribution (cervical, thoracic, or lumbar spine or anterior chest); additionally there must be point tenderness in at least 11 of 18 specified sites." *Id.*
*(continued on next page)*

diagnosis – was obvious, *see id*. at 5, and (iii) the gap could easily have been filled by ordering a consultative examination, *see id*.

In so arguing, she downplays *Heggarty's* observation that, "[i]n most instances, where appellant himself fails to establish a sufficient claim of disability, the Secretary need proceed no further." *Heggarty*, 947 F.2d at 997; *see also, e.g., Hawkins v. Chater*, 113 F.3d 1162, 1167-68 (10th Cir. 1997) ("[I]n a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development.  In the absence of [] a request by counsel, we will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record.") (citation omitted).  There is no indication in the Record that the plaintiff sought a consultative examination or otherwise suggested to the administrative law judge that the Record was incomplete.

In any event, an administrative law judge harbors discretion whether to order a consultative examination. *See* 20 C.F.R. §§ 404.1517, 416.917 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examinations or tests."); *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) ("The regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination.") (citation and internal punctuation omitted).  A failure to order such an examination has been held not to constitute an abuse of discretion unless the examination was necessary to enable the administrative law judge to determine disability. *See, e.g., Bishop v. Barnhart,* 78 Fed. Appx. 265, 268 (4th Cir. 2003) ("[A] consultative examination is required when the evidence as a whole is insufficient to support a decision.  That simply is not the

4

case here.") (citation omitted); *McCuller v. Barnhart*, 72 Fed. Appx. 155, 160 n. 5 (5th Cir. 2003) ("[T]he ALJ's duty to undertake a full inquiry does not require a consultative examination at government expense unless the record establishes that such an examination is necessary to enable the ALJ to make the disability decision.") (citation and internal punctuation omitted).

The Record supplied good reason for the administrative law judge both to doubt the substantiality of the plaintiff's claim of fibromyalgia and to determine that, whatever her impairments, she did not suffer symptoms of a disabling level of severity, given that:

1. The plaintiff never submitted any evidence corroborating her claim that she was diagnosed some years earlier in Connecticut and Massachusetts with fibromyalgia.[5]

2. While the plaintiff did submit a "Disability Report" from Dr. Horowitz indicating that she suffered certain functional limitations as a result of fibromyalgia, *see* Record at 111, the Record contained no corroborating notes from Dr. Horowitz, and his Disability Report indicated that he simply accepted at face value her self-report of a previous diagnosis in Connecticut and Massachusetts, *see id*. In any event, chiropractors are not "acceptable medical sources" for purposes of establishment of the existence of a medically determinable impairment. *See* 20 C.F.R. §§ 404.1513(a) & (d)(1), 416.913(a) & (d)(1).

3. Although Dr. Ducker did note, on examination of the plaintiff on December 20, 2004, that she "certainly had a lot of point tenderness in the rhomboid muscle groups and upper trapezius as well as the lumbar group[,] and it is certainly conceivable that she has fibromyalgia[,]" and reported

---

[5] Subsequent to issuance of the instant adverse decision, the plaintiff submitted to the Appeals Council two notes reflecting treatment at the Lahey Clinic Medical Center ("Lahey Clinic") in Burlington, Massachusetts, on January 14, 2003 and February 26, 2003. *See* Statement of Errors at 2 & n.2; Record at 190-91. The plaintiff makes no reasoned argument that these notes bear on the merits of the instant appeal. *See generally* Statement of Errors. In any event, while the notes reflect followup treatment for fibromyalgia and state that the condition was diagnosed at the Lahey Clinic six years earlier, *see* Record at 190-91, no records were submitted reflecting
*(continued on next page)*

that she had expressed agreement with his plan to send her for a rheumatology opinion and commence a course of physical therapy, he noted that she phoned his office approximately two hours later to cancel the physical therapy and request that the rheumatology consultation not be scheduled, stating that she had decided she did not get along with him as a physician and was going to find another doctor.  *See* Record at 178.

    4.        On or about December 29, 2004 the plaintiff established care at the Arthur Jewell Community Health Center ("Arthur Jewell") in Brooks, Maine, where she was seen by Mary Elsa Theobald, N.P.  *See id*. at 167, 175-76.  Theobald noted, *inter alia,* that the plaintiff reported "she saw Dr. Ducker in Unity once but does not want to see him b/c [because] he doesn't think that she really has fibromyalgia[.]"  *Id*. at 175.[6]  Theobald further noted that the plaintiff had stated she wanted "to go on disability b/c [because] cannot [do] physical labor 2° [secondary to] back pain" but that Theobald had "told [her] 0 disability.  Needs to train for appropriate [word illegible] [f]rom Eastern Maine Community College and find area of interest.  Can apply for student aid and gov't assistance, but 0 disability through this office.  She states she agrees.  Saw it as her only option."  *Id*. at 175-76.[7]

    5.        In March 2005, in connection with a request for unemployment benefits, the plaintiff presented a Maine Department of Labor form for completion by Theobald.  *See id*. at 167.  The form, which appears to have been completed and signed by an Arthur Jewell physician whose signature is illegible, indicated that the plaintiff was then able to work full-time.  *See id*.[8]

---

findings on the basis of which such a diagnosis may have been made.

[6] This does not inspire confidence that, had the administrative law judge chosen to attempt to send the plaintiff to a consultative examiner, she would have cooperated with that process.

[7] The "physical labor" to which the plaintiff referred was milking cows.  At her hearing, the plaintiff testified that although she ceased milking cows full-time in August 2004, she continued that job thereafter on a part-time basis, working ten hours a week.  *See* Record at 198-99.

[8] The signatory appears to have been Stephanie Dettlebach, M.D., whom the plaintiff's counsel indicated in a letter to the Appeals Council had treated his client, along with Theobald, at Arthur Jewell.  *See* Record at 167, 189.

In these circumstances, the plaintiff has failed to show that the administrative law judge fell short in her duty to develop the record, or abused her discretion, in neglecting to arrange for a consultative examination by a rheumatologist.[9]

At oral argument, the plaintiff's counsel raised a related but distinct point: that the administrative law judge had failed to recontact the treating chiropractor, Dr. Horowitz, for clarification or, alternatively, send the plaintiff out for a consultative examination, despite (i) the inadequacy of the record to make a disability determination and (ii) the administrative law judge's admission in her decision that she did not understand Dr. Horowitz's opinion. *See* Record at 18 ("It is unclear [with respect to limitations set forth by Dr. Horowitz following his] comment that sitting would be satisfactory, whether any of the enumerated limitations are the doctor's opinion, or merely a repetition of the claimant's allegations."). For the proposition that, in these circumstances, the administrative law judge had a duty to recontact, the plaintiff's counsel cited *Frost v. Barnhart*, No. 03-215-P-H, 2004 WL 1529286 (D. Me. May 7, 2004) (rec. dec., *aff'd* June 3, 2004).

While the plaintiff did cite *Frost* in her Statement of Errors, *see* Statement of Errors at 5, she made no reasoned argument sufficient to put the court or opposing counsel on notice that she claimed default in the duty to recontact a treating source, *see generally id*. This court has warned that a failure

---

[9] The plaintiff argues, *inter alia*, that her case is distinguishable from certain others in which this court has rebuffed claims of failure to develop the record. *See* Statement of Errors at 5 (citing *Morton v. Barnhart*, No. 05-82-P-S, 2005 WL 3263933 (D. Me. Nov. 30, 2005) (rec. dec., *aff'd* Dec. 20, 2005); *Sliker v. Apfel*, No. CIV. 00-196-P-C. 2000 WL 1772461 (D. Me. Dec. 4, 2000) (rec. dec., *aff'd* Jan. 17, 2001); *Donegan v. Apfel*, No. 00-50-P-C, 2000 WL 1511200 (D. Me. Oct. 6, 2000) (rec. dec., *vacated* Jan. 11, 2001)). She posits that, in those cases, missing records could have been obtained by counsel or there already were consultative examinations of record. *See id*. Judge Carter declined to adopt my recommended decision in *Donegan*, agreeing with the plaintiff that the administrative law judge had failed to develop the record adequately with respect to his somatoform disorder in circumstances in which the administrative law judge had limited the testimony of a medical expert at hearing that the plaintiff's disorder met the criteria of one of the commissioner's disability listings. *See Donegan*, 2000 WL 1511200, at *2 & n.4; Order [] Vacating the Recommended Decision of the Magistrate Judge (Docket No. 11), *Donegan v. Apfel*, Civil No. 00-50-P-C (D. Me. Jan. 11, 2001). In my view, the instant case is not materially distinguishable from *Morton,* in which the plaintiff, who was represented by counsel, never obtained missing records himself or requested that the administrative law judge do so and offered no explanation for those omissions, *see Morton*, 2005 WL 3263933, at *6, or *Sliker*, in which I found "no gaps in the evidence necessary to a reasoned evaluation of the claim[,]" *Sliker*, 2000 WL 1772461, at *4 (internal quotation marks omitted).

to raise a point in a Social Security statement of errors is tantamount to a waiver. *See, e.g., Farrin v. Barnhart*, No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future, issues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted).

In any event, *Frost* does not dictate reversal and remand in this case. As noted in *Frost* and acknowledged by the plaintiff's counsel at oral argument, a default in the duty to recontact is reversible error not only when an adjudicator cannot ascertain the basis of a treating source's opinion from the case record but also when that record is inadequate to make a determination of disability. *See Frost*, 2004 WL 1529286, at *11. As discussed above, the record was adequate for that purpose in this case.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 11th day of July, 2007.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge